IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MISTWOOD PARTNERSHIP,<br><br>    Plaintiff,<br><br>    v.<br><br>DOCUSIGN, INC.,<br><br>    Defendant. | C.A. No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Mistwood Partnership ("Plaintiff" or "Mistwood"), for its Complaint against Defendant DocuSign, Inc. ("Defendant" or "DocuSign"), hereby alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement of U.S. Patent No. 8,924,495 (the "'495 Patent"), U.S. Patent No. 8,799,385 (the "'385 Patent"), and U.S. Patent No. 8,799,386 (the "'386 Patent") (collectively, the "Patents-in-Suit"), arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. §§ 271 and 281.

**THE PARTIES**

2. Plaintiff Mistwood Partnership is a general partnership organized and existing under the laws of the State of Texas, and maintains its principal place of business at 6225 Bernia Dr., Austin, TX 78739.

3. Defendant DocuSign, Inc. is a corporation organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 122 Main Street, San Francisco, CA 94105. DocuSign may be served with process through its registered agent: Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

**JURISDICTION AND VENUE**

4. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

5. This Court has subject matter jurisdiction over this patent infringement action under 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over DocuSign because DocuSign is incorporated in the State of Delaware and is therefore subject to general personal jurisdiction in this District. DocuSign has committed acts within the State of Delaware giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over DocuSign would not offend traditional notions of fair play and substantial justice. DocuSign, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the Patent-in-Suit. DocuSign actively directs its activities to customers located in the State of Delaware.

7. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(d) and 28 U.S.C. § 1400(b) because DocuSign is incorporated in, and resides in this District. DocuSign is organized and existing under the laws of the State of Delaware.

## PATENTS-IN-SUIT

8. Plaintiff is the assignee of all right, title and interest in the Patents-in-Suit, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Patents-in-Suit. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the Patents-in-Suit by Defendant.

9. The '495 Patent is entitled "Delivery Control for HTTP Communications Among Multiple End User Communication Devices," and duly and legally issued on December 30, 2014. The application leading to the '495 Patent was filed on February 26, 2013, and is a continuation-in-part of Application No. 13/526,688, filed on June 19, 2012, which issued as U.S. Patent No. 8,799,386. A true and correct copy of the '495 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10. The '385 Patent is entitled "Delivery Control for Email Communicated Among Multiple End User Communication Devices," and duly and legally issued on August 5, 2014. The application leading to the '385 Patent was filed on June 19, 2012, and is a continuation-in-part of

a series of earlier applications, including Application Nos. 13/199,307; 13/134,591 (now U.S. Patent No. 9,684,887); 13/068,340 (now U.S. Patent No. 9,760,867); and 13/065,839 (now U.S. Patent No. 10,009,305). A true and correct copy of the '385 Patent is attached hereto as Exhibit 2 and incorporated herein by reference.

11. The '386 Patent is entitled "Delivery Control for Email Communicated Among Multiple End User Communication Devices," and duly and legally issued on August 5, 2014. The application leading to the '386 Patent was filed on June 19, 2012, and is a continuation-in-part of a series of earlier applications, including Application Nos. 13/199,307; 13/134,591 (now U.S. Patent No. 9,684,887); 13/068,340 (now U.S. Patent No. 9,760,867); and 13/065,839 (now U.S. Patent No. 10,009,305). A true and correct copy of the '386 Patent is attached hereto as Exhibit 3 and incorporated herein by reference.

12. The Patents-in-Suit are valid and enforceable.

13. On information and belief, the Patents-in-Suit have been publicly available, duly issued, and widely accessible for more than a decade. As publicly issued United States patents, they have been searchable and discoverable through standard patent databases and industry diligence. Despite this, DocuSign has continued to develop, market, and provide the Accused Products in a manner that infringes the Patents-in-Suit. On information and belief, DocuSign knew or should have known of the Patents-in-Suit and of its infringing activities, and has acted with reckless disregard of Mistwood's patent rights.

## DOCUSIGN'S INFRINGING ACTIVITIES AND PRODUCTS

14. Beginning with DocuSign's Winter 2015 release and continuing thereafter, DocuSign has provided software-based products, systems, and services for managing electronic agreements with electronic signatures, including but not limited to Docusign eSignature and the DocuSign IAM applications (which further include, without limitation, IAM Core, IAM for Sales, and IAM for Customer Experience) (collectively, the "Accused Products"). The Accused Products include DocuSign's core capabilities, including, among other things, DocuSign eSignature, a capability for electronically signing documents such as contracts, and DocuSign CLM, a capability for contract life management.

15. DocuSign's Accused Products include systems and software that manage delivery, receipt acknowledgment, and controlled display of HTTP communications among multiple end-

user communication devices, including through operation of DocuSign eSignature and the DocuSign IAM applications when used in their intended and ordinary manner.

16. On information and belief, beginning with DocuSign's Winter 2015 release and continuing thereafter, DocuSign's Accused Products, employing and incorporating DocuSign's eSignature service, incorporated a standardized "new signing experience" for recipients, as described in DocuSign's public documentation. This functionality, which was enabled for production use by December 2014 and subsequently made the default experience for users, remains part of the Accused Products and is used in connection with the systems and methods that infringe the '495 Patent.

17. Claim charts comparing asserted claims of the '495 Patent, the '385 Patent, and the '386 Patent to DocuSign's Accused Products are attached as Exhibits 4, 5, and 6, respectively, and incorporated herein

## COUNT 1: INFRINGEMENT OF THE '495 PATENT

18. Plaintiff incorporates the above paragraphs herein by reference.

19. On information and belief, DocuSign has and continues to directly infringe one or more claims of the '495 Patent, in violation of 35 U.S.C. § 271(a), by making, using, selling, offering for sale, and/or importing into the United States the Accused Products, including the software applications and systems implementing DocuSign eSignature and the DocuSign IAM applications.

20. Specifically, DocuSign directly infringes the '495 Patent by making, using, and providing systems and software, including but not limited to the Accused Products, that perform, and by directing and controlling the performance of, the steps of the claimed methods for delivery control of HTTP communications among multiple end-user communication devices, including when customers use DocuSign eSignature and the DocuSign IAM applications in their intended and ordinary manner.

21. On information and belief, to the extent that any steps of the asserted method claims are performed by DocuSign customers or other third parties rather than by DocuSign itself, DocuSign nonetheless infringes the '495 Patent because it directs and controls, and/or conditions participation in, the performance of such steps through the design and operation of the Accused Products. In addition, DocuSign has actively induced infringement of the '495 Patent in violation

of 35 U.S.C. § 271(b) by knowingly encouraging, instructing, and facilitating customers' use of the Accused Products in a manner that performs the claimed methods, including through product design, user interfaces, documentation, and technical support.

22. For example, DocuSign infringes, literally and/or under the doctrine of equivalents, at least Claims 1, 6 and 11 of the '495 Patent through the operation and provision of the Accused Products. Claim 1 is infringed by DocuSign performing and/or directing and controlling the performance of the recited method steps through use of the Accused Products. Claim 6 is infringed by DocuSign making, selling, offering for sale, importing, and/or providing software embodying the Accused Products whose code, embodied on non-transitory computer-readable media, implements the claimed method. Claim 11 is infringed by DocuSign providing software embodying the Accused Products that implements the functionality recited in Claim 11 when executed on end-user communication devices. At a minimum, the Accused Products perform substantially the same functions, in substantially the same way, to achieve substantially the same results as the corresponding elements of Claims 1, 6, and 11.

23. For example, Claim 1 of the '495 Patent recites:

> 1. A method implemented by a first end-user communication device for processing the receipt of a first HTTP message, the method comprising:
> receiving the first HTTP message that comprises a digital packet having a header and a user data segment, the user data segment containing a user message and an acknowledgement command where the acknowledgement command conveys a request from an originating device to acknowledge receipt of the subject first HTTP message;
> preventing the display on a screen of the first end-user communication device of content of the received user message until input on the first end-user communication device is entered authorizing a reply to the acknowledgement request;
> upon receiving the input authorizing the reply:
> automatically generating by the first end-user communication device and transmitting a reply HTTP message with an acknowledgement to the originating device corresponding to the subject first HTTP message;
> enabling the display of the content of the corresponding received user message on the screen of the first end-user communication device; and
> storing in the first end-user communication device a read message indicator having a value that represents that the reply HTTP message was authorized and the content of the received first HTTP message enabled to be displayed.

24. A comparison of Claims 1, 6 and 11 of the '495 Patent to the Accused Products is attached as Exhibit 4, which is incorporated herein by reference.

25. DocuSign has also actively induced infringement of the '495 Patent in violation of 35 U.S.C. § 271(b) by knowingly encouraging, instructing, and facilitating customers' use of the Accused Products in a manner that infringes the '495 Patent, including through product design, user documentation, training materials, and technical support.

26. DocuSign has further contributorily infringed the '495 Patent in violation of 35 U.S.C. § 271(c) by offering, selling, and providing the Accused Products, which constitute material components especially made or adapted for use in infringing the '495 Patent, are not staple articles of commerce suitable for substantial non-infringing use, and are provided with knowledge of the '495 Patent and of their infringing use.

27. DocuSign has knowledge of the '495 Patent at least as of the date when it was notified of the filing of this action, and on information and belief, had actual or constructive knowledge of the '495 Patent prior to the filing of this action given its public issuance and long-standing availability. DocuSign's infringement of the '495 Patent has thus been committed with knowledge of the '495 Patent. On information and belief, such infringement is also knowing, intentional and deliberate, and has been and continues to be willful, making DocuSign liable for enhanced damages pursuant to 35 U.S.C. § 284.

28. DocuSign's acts of infringement of the '495 Patent have caused and will continue to cause Plaintiff damages for which Plaintiff is entitled to compensation pursuant to 35 U.S.C. § 284.

29. DocuSign's ongoing infringement of the '495 Patent has caused and will continue to cause Mistwood irreparable harm, for which Mistwood has no adequate remedy at law. In particular, DocuSign's continued unauthorized use of the patented technology deprives Mistwood of its right to exclude others from practicing the '495 Patent and results in harm that is difficult to quantify, including the loss of control over the licensing and enforcement of its patent rights. Unless enjoined, DocuSign will continue its infringing conduct. Mistwood is therefore entitled to injunctive relief pursuant to 35 U.S.C. § 283.

**COUNT 2: INFRINGEMENT OF THE '385 PATENT**

30. Plaintiff incorporates the above paragraphs herein by reference.

31. On information and belief, DocuSign has and continues to directly infringe one or more claims of the '385 Patent, in violation of 35 U.S.C. § 271(a), by making, using, selling,

offering for sale, and/or importing into the United States the Accused Products, including the software applications and systems implementing DocuSign eSignature and the DocuSign IAM applications.

32. Specifically, DocuSign directly infringes the '385 Patent by making, using, and providing systems and software, including but not limited to the Accused Products, that perform, and by directing and controlling the performance of, the steps of the claimed methods for delivery control of communications among multiple end-user communication devices, including when customers use DocuSign eSignature and the DocuSign IAM applications in their intended and ordinary manner.

33. On information and belief, to the extent that any steps of the asserted method claims of the '385 Patent are performed by DocuSign customers or other third parties rather than by DocuSign itself, DocuSign nonetheless infringes the '385 Patent because it directs and controls, and/or conditions participation in, the performance of such steps through the design and operation of the Accused Products. In addition, DocuSign has actively induced infringement of the '385 Patent in violation of 35 U.S.C. § 271(b) by knowingly encouraging, instructing, and facilitating customers' use of the Accused Products in a manner that performs the claimed methods, including through product design, user interfaces, documentation, and technical support.

34. For example, DocuSign infringes, literally and/or under the doctrine of equivalents, at least Claims 1, 7 and 13 the '385 Patent through the operation and provision of the Accused Products. Claim 1 of the '385 Patent is infringed by DocuSign performing and/or directing and controlling the performance of the recited method steps through operation of the Accused Products. Claim 7 of the '385 Patent is infringed by DocuSign making, selling, offering for sale, importing, and/or providing software embodying the Accused Products, whose code, embodied on non-transitory computer-readable media of the computer program product, implements the claimed method. Claim 13 of the '385 Patent is infringed by DocuSign providing software embodying the Accused Products that implements the functionality recited in Claim 13 when executed on end-user communication devices. At a minimum, the Accused Products perform substantially the same functions, in substantially the same way, to achieve substantially the same results as the corresponding elements of Claims 1, 7 and 13 of the '385 Patent.

35. For example, Claim 1 of the '385 Patent recites:

> 1. A method implemented by a first end-user communication device for processing emails in which acknowledgement of receipt by an addressee of an email is requested by an originator of the email, the method comprising:
>
>    generating, by the first end-user communication device, the email comprising a digital packet having a header segment and a user data segment, the user data segment containing a user message and a command portion;
>
>    inserting an acknowledgement request in a command field in the command portion wherein the addressee device upon receipt thereof executes predetermined steps associated with the acknowledgement request; and
>
>    transmitting the digital packet for delivery to the addressee device, and wherein the digital packet is transmitted by using either simple mail transfer protocol or hypertext transfer protocol for delivery of the email to the addressee device.

36. A comparison of Claims 1, 7 and 13 of the '385 Patent to the Accused Products is attached as Exhibit 5 and is incorporated herein by reference.

37. DocuSign has further contributorily infringed the '385 Patent in violation of 35 U.S.C. § 271(c) by offering, selling, and providing the Accused Products, which constitute material components specially made or adapted for use in infringing the '385 Patent, are not staple articles of commerce suitable for substantial non-infringing use, and are provided with knowledge of the '385 Patent and of their infringing use.

38. DocuSign has knowledge of the '385 Patent at least as of the filing of this action, and on information and belief, had actual or constructive knowledge of the '385 Patent prior to the filing of this action given its public issuance and long-standing availability. On information and belief, DocuSign's infringement of the '385 Patent has been and continues to be knowing, intentional, and willful, entitling Mistwood to enhanced damages pursuant to 35 U.S.C. § 284.

39. DocuSign's acts of infringement of the '385 Patent have caused and will continue to cause Plaintiff damages for which Plaintiff is entitled to compensation pursuant to 35 U.S.C. § 284.

40. DocuSign's ongoing infringement of the '385 Patent has caused and will continue to cause Mistwood irreparable harm, for which Mistwood has no adequate remedy at law. Unless enjoined, DocuSign will continue its infringing conduct. Mistwood is therefore entitled to injunctive relief pursuant to 35 U.S.C. § 283.

**COUNT 3: INFRINGEMENT OF THE '386 PATENT**

41. Plaintiff incorporates the above paragraphs herein by reference.

42. On information and belief, DocuSign has and continues to directly infringe one or more claims of the '386 Patent, in violation of 35 U.S.C. § 271(a), by making, using, selling, offering for sale, and/or importing into the United States the Accused Products, including the software applications and systems implementing DocuSign eSignature and the DocuSign IAM applications.

43. Specifically, DocuSign directly infringes the '386 Patent by making, using, and providing systems and software, including but not limited to the Accused Products, that perform, and by directing and controlling the performance of, the steps of the claimed methods for managing and controlling communications among end-user communication devices, including when customers use DocuSign eSignature and the DocuSign IAM applications in their intended and ordinary manner.

44. On information and belief, to the extent that any steps of the asserted method claims of the '386 Patent are performed by DocuSign customers or other third parties rather than by DocuSign itself, DocuSign nonetheless infringes the '386 Patent because it directs and controls, and/or conditions participation in, the performance of such steps through the design and operation of the Accused Products. In addition, DocuSign has actively induced infringement of the '386 Patent in violation of 35 U.S.C. § 271(b) by knowingly encouraging, instructing, and facilitating customers' use of the Accused Products in a manner that performs the claimed methods, including through product design, user interfaces, documentation, and technical support.

45. For example, DocuSign infringes, literally and/or under the doctrine of equivalents, at least Claims 1, 6, 9 and 11 of the '386 Patent through the operation and provision of the Accused Products. Claim 1 of the '386 Patent is infringed by DocuSign performing and/or directing and controlling the performance of the recited method steps through use of the Accused Products. Claims 6 and 9 of the '386 Patent are infringed by DocuSign making, selling, offering for sale, importing, and/or providing software embodying the Accused Products whose code, embodied on non-transitory computer-readable media of the computer program product, implements the claimed method. Claim 11 of the '386 Patent is infringed by DocuSign providing software embodying the Accused Products that implements the functionality recited in Claim 11 when executed on end-user communication devices. At a minimum, the Accused Products perform substantially the same functions, in substantially the same way, to achieve substantially the same results as the corresponding elements of the asserted claims of the '386 Patent.

46. For example, Claim 1 of the '386 Patent recites:

1. A method implemented by a first end-user communication device for processing the receipt of an email, the method comprising:
    receiving the email that comprises a digital packet having a header and a user data segment, the user data segment containing a user message and an acknowledgement command where the acknowledgement command conveys a request from an originating device to acknowledge receipt of the subject email;
    preventing the display on a screen of the first end-user communication device of content of the received user message until input on the first end-user communication device is entered authorizing a reply to the acknowledgement request;
    upon receiving the input authorizing the reply:
        automatically generating by the first end-user communication device and transmitting a reply email with an acknowledgement to the originating device corresponding to the subject email;
    enabling the display of the content of the corresponding received user message on the screen of the first end-user communication device; and
    storing in the first end-user communication device a read message indicator having a value that represents that the reply email was authorized and the content of the received email enabled to be displayed; and wherein the email is transmitted from the originating device by using either simple mail transfer protocol or hypertext transfer protocol for delivery of the email to the first end-user communication device.

47. A comparison of Claims 1, 6, 9 and 11 of the '386 Patent to the Accused Products is attached as Exhibit 6 and is incorporated herein by reference.

48. DocuSign has also actively induced infringement of the '386 Patent in violation of 35 U.S.C. § 271(b) by knowingly encouraging, instructing, and facilitating customers' use of the Accused Products in a manner that infringes the '386 Patent, including through product design, user documentation, training materials, and technical support.

49. DocuSign has further contributorily infringed the '386 Patent in violation of 35 U.S.C. § 271(c) by offering, selling, and providing the Accused Products, which constitute material components especially made or adapted for use in infringing the '386 Patent, are not staple articles of commerce suitable for substantial non-infringing use, and are provided with knowledge of the '386 Patent and of their infringing use.

50. DocuSign has knowledge of the '386 Patent at least as of the date when it was notified of the filing of this action, and on information and belief, had actual or constructive knowledge of the '386 Patent prior to the filing of this action given its public issuance and long-standing availability. DocuSign's infringement of the '386 Patent has thus been committed with knowledge of the '386 Patent. On information and belief, such infringement has been and

continues to be knowing, intentional, and willful, entitling Mistwood to enhanced damages pursuant to 35 U.S.C. § 284.

51. DocuSign's acts of infringement of the '386 Patent have caused and will continue to cause Plaintiff damages for which Plaintiff is entitled to compensation pursuant to 35 U.S.C. § 284.

52. DocuSign's ongoing infringement of the '386 Patent has caused and will continue to cause Mistwood irreparable harm, for which Mistwood has no adequate remedy at law. In particular, DocuSign's continued unauthorized use of the patented technology deprives Mistwood of its right to exclude others from practicing the '386 Patent and results in harm that is difficult to quantify, including the loss of control over the licensing and enforcement of its patent rights. Unless enjoined, DocuSign will continue its infringing conduct. Mistwood is therefore entitled to injunctive relief pursuant to 35 U.S.C. § 283.

## JURY DEMAND

53. Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter a Judgment and Order in its favor and against DocuSign as follows:

A. An adjudication that DocuSign has directly and indirectly infringed and continues to infringe the Patents-in-Suit;

B. Ordering an accounting of all damages sustained by Plaintiff as a result of DocuSign's acts of infringement of the Patents-in-Suit;

C. Awarding damages to be paid by DocuSign adequate to compensate Plaintiff for DocuSign's past infringement of the Patents-In-Suit, and any continuing or future infringement of the Patent-In-Suit through the date such judgment is entered, in an amount no less than the amount of a reasonable royalty under 35 U.S.C. § 284, and including pre-judgment and post-judgment interest, costs, expenses, and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

D. Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining DocuSign and each of its agents, servants, employees, principals, officers, attorneys, successors,

    assignees, and all those in active concert or participation with DocuSign, including related individuals and entities, customers, representatives, OEMs, dealers, and distributors, from further acts of infringement with respect to the Patents-In-Suit;

E. Ordering that the damages award be increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

F. Finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its costs, reasonable attorneys' fees, expenses and interest;

G. Awarding such other and further relief as this Court deems just and proper.

Dated: February 20, 2026

OF COUNSEL:

Shen Wang (pro hac vice pending)
Yu Di (pro hac vice pending)
Tianci Zhao (pro hac vice pending)
Chen Li (pro hac vice pending)
Arch & Lake LLP
203 N LaSalle Street, Suite 2100
Chicago, IL, 60601
(312) 558-1369
shenwang@archlakelaw.com
yudi@archlakelaw.com
teresazhao@archlakelaw.com
chenli@archlakelaw.com

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Plaintiff*
*Mistwood Partnership*